James R. SPARKS et al.

v.

UNITED STATES of America et al.

Civ. A. No. 70–7.

United States District Court,
E. D. Louisiana,
Baton Rouge Division.

March 26, 1970.

John M. Mamoulides, Allen & Mamoulides, Metairie, F. Lee Bailey, Boston, Mass., cocounsel, for plaintiffs.

Gerald J. Gallinghouse, U. S. Atty., Eastern District of Louisiana, New Orleans, Charles H. White, Asst. U. S. Atty., E. D. Louisiana, New Orleans, La., for defendants.

WEST, Chief Judge:

This is an action for injunctive relief brought by three individual plaintiffs, all of whom are employed as air traffic controllers by the Federal Aviation Administration (FAA) and who are stationed as such at Ryan Airport, Baton Rouge, Louisiana. They seek herein preliminary and permanent injunctions to enjoin plaintiffs' immediate employer, the FA Administrative agency of the Department of Transportation, which is itself a Cabinet level agency of the United States government, from implementing an announced decision to transfer each of the plaintiffs separately from the Ryan Airport Facility in Baton Rouge to three other FAA facilities; a transfer plaintiffs have labeled as "arbitrary, capricious, and unreasonable." Injunctive relief is requested so as to permit an administrative grievance proceeding filed by plaintiffs with the FAA to contest their proposed transfer to other FAA facilities to proceed in due course to finality within the framework of the FAA grievance procedure, and, if necessary, to permit judicial review of those proceedings.

Federal subject matter jurisdiction rests on 5 U.S.C. §§ 701(a) and 702, Administrative Procedure Act provisions creating a right to judicial review of administrative agency action, except where review is precluded by a specific statute, by any person suffering some legal wrong because of such agency action or who may be otherwise adversely affected or aggrieved. Plaintiffs, of course, allege that they have been aggrieved within the meaning of these statutes because the FAA's decision to transfer them, a decision upheld by both a grievance examiner and an appeals officer, is, nevertheless, "arbitrary, capricious, and unreasonable." Although plaintiffs are doubtless aggrieved by the transfers, they failed completely to show that the transfers were either arbitrary, capricious, or unreasonable.

Shortly after the grievance procedure was initiated, the FAA assigned a grievance examiner to investigate plaintiffs' charges in detail and to prepare an "Inquiry Record" of the proceedings in accord with applicable FAA regulations. See FAA Handbook, Sections 416–417. Following his appointment, the grievance examiner conducted an exhaustive

fact-finding investigation which culminated on December 8, 1969 with his recommendation that the transfer orders be sustained. An appeals officer upheld the grievance examiner's recommendation that the transfer orders be sustained and on or about January 15, 1970, the appeals officer advised the plaintiffs that they had a limited period of time within which to elect between the facilities to which they were scheduled to be transferred or some suitable alternate location. In response thereto, plaintiffs filed this action on January 16, 1970. An evidentiary hearing was held before this Court on February 12, 1970, at which time both sides were given the opportunity to expand on the evidence previously adduced by the grievance examiner and summarized in his written report to the appeals officer. After carefully considering the grievance examiner's report, which was offered and admitted into evidence at the hearing had on February 12, 1970, together with the additional evidence adduced at that hearing by both sides, we have concluded there is no reason for disturbing or interfering with the FAA's decision to transfer the plaintiff-employees from its Ryan Airport facility to any other FAA facility as that agency sees fit.

Prior to the grievance examiner commencing his investigation of this matter, plaintiffs were before this Court to request that we compel the examiner to permit plaintiffs to make, at their expense, a verbatim transcript of all proceedings had before the examiner during the course of his investigation of plaintiffs' grievance. Since the option to order a verbatim record of such proceedings, as opposed to a summarized record, lies, under FAA regulations, with the examiner and not plaintiffs, we denied their request. Sparks v. Federal Aviation Agency, 305 F.Supp. 673 (E.D.La. 1969). Plaintiffs have now renewed herein their request for a verbatim transcript, urging that the summarized record prepared by the examiner does not adequately reflect, to plaintiffs' detriment, what went on before him. The short answer to this contention is that plaintiffs were afforded ample opportunity to supplement any real or imagined deficiencies in the summarized record at the evidentiary hearing had before this Court on February 12, 1970. We note, too, that plaintiffs did utilize that opportunity by eliciting testimony from five witnesses, and, had they also chosen to do so, they might have summoned any number of additional witnesses who might have had something relevant to contribute. Thus, because we have considered both the examiner's summarized record *and* the evidence which plaintiffs elected to adduce at the evidentiary hearing, we deem totally irrelevant any contention that the examiner's report does not fairly reflect what went on before him during the course of the investigation. Our decision that the transfers were not arbitrary, capricious, or unreasonable is based on *all* the evidence presented to this Court.

The question which we have decided, and it is a simple question, turns on nothing more than the "reasonableness" of plaintiffs' transfer to other FAA facilities. Plaintiffs, all members of the Professional Air Traffic Controllers Organization (PATCO), take the position that the transfers are unreasonable because they represent an attempt to break up the existing PATCO organization at the Ryan Airport facility; in other words, the transfers are said to be prompted by the FAA's anti-union animus toward PATCO. On the other hand, following a thorough survey of the Ryan Airport facility in August, 1969, the FAA takes the position that the transfers were reasonable and, in fact, necessary to correct certain operational shortcomings at the Ryan Airport facility which had surfaced as early as October, 1967. The evidence before the Court, or the lack of evidence if you will, clearly supports the latter position.

There is no need to repeat the evidence here. Suffice it to say that both the grievance examiner and the appeals officer, after a thorough investigation, found no indication that plaintiffs'

transfers were motivated by their PAT-CO affiliation. This Court agrees with that conclusion. Moreover, the only substantial evidence offered by plaintiffs at the February 12th hearing was the self-serving statements of two of the petitioners, James R. Sparks and Shelby F. McCurnin, who testified that they "believed" their PATCO affiliation was responsible for their being transferred on the basis of conversations with the former facility chief. The former facility chief was not called as a witness. Mr. Francis E. Whitfield, Chief of Personnel Training Division of the Southwest Region of the FAA testified as follows:

"Q. Are you satisfied with the reasons [for transferring plaintiffs] that were given?

"A. Absolutely.

"Q. What was the reason?

"A. It is common practice in the Federal Aviation Administration that we will not administratively reassign an employee to any position that they cannot be expected to perform properly. The reason given me for the identification of these originally four, one of which was later reassigned elsewhere, was that it was considered that they had the best potential to succeed in the job to which they were being reassigned.

"Q. In other words, you were convinced that the reassignment was proper on the basis that they would be able to perform the duties to which they were being sent?

"A. That's correct. In addition I might add that I was convinced that reassignments from the Baton Rouge Tower were necessary.

"Q. Why, Mr. Whitfield? What convinced you of that?

"A. Well, I am not an air traffic expert; I do not speak as one, but the air traffic experts who are duly qualified and certified as such, indicated that the operational techniques and procedures employed at the Baton Rouge Tower were not proper.

"Q. Did these men lack the techniques and procedures?

"A. They did not apply the techniques and procedures. They did not apply the techniques and procedures that were considered necessary by air traffic experts.

\*     \*     \*     \*     \*     \*

"Q. Had you heard anybody in the making of the decision to transfer these men refer to them or indicate that they were being transferred because they were members of Patco or trouble makers?

"A. No, I did not.

"Q. As a matter of fact, did they have any history of being, to your knowledge, troublemakers?

"A. To my knowledge, they have no such history.

\*     \*     \*     \*     \*     \*

"Q. Does the FAA have a policy of transferring noncontrollers as well as controllers in the administration?

"A. The FAA has a standing policy requiring mobility of all employees. In the Air Traffic Controller occupation a condition of their employment is that they agree to a mobility proviso which requires they serve wherever the needs of the service require it. It is common practice in the Federal Aviation Administration to make administrative reassignments of all of their employees; this is not limited to air traffic controllers.

"Q. Is there anything that you know about the transfers of these three controllers that would lead you to believe that their transfers are caused by anything other than the administration's de-

termination that it is for the good of the service?

"A. There has been nothing brought to my attention or to my knowledge that makes this particular move any different from any other moves that we make of this type throughout the course of the year. There is absolutely no reason for me to doubt that these moves are for the good of the service."

There is absolutely nothing in this record, other than some obviously self-serving generalizations made by the plaintiffs themselves, which in any way refutes the above testimony. The plaintiffs have simply failed to carry their burden of proving by a preponderance of the evidence—indeed by any evidence at all—that the transfers complained of were "arbitrary and capricious." We are further persuaded that there was no anti-union animus involved in plaintiffs' transfer by the testimony of one Jack F. Gaines, the local Director of PATCO at the Ryan Airport facility, who testified that at least two of plaintiffs' replacements were also PATCO members. If the FAA were really trying to break up the PATCO organization at Ryan, it is strange that they would choose to replace petitioners with new air controllers who were *also* PATCO members.

We are not unmindful of a clash between the FAA and PATCO, currently occupying many of the nation's headlines, which has on occasion shut down air traffic at many FAA facilities. But be that as it may, there is simply no evidence in this case that suggests plaintiffs were transferred because of their PATCO affiliation. The injunctive relief sought by plaintiffs is therefore denied, and judgment will be entered accordingly.